LISLE–DUNNING CONST. CO. v. McCALL. (No. 5278.)

(Court of Civil Appeals of Texas. San Antonio. May 13, 1914. Rehearing Denied June 17, 1914.)

1. APPEAL AND ERROR (§ 997*)—QUESTIONS REVIEWABLE—SUFFICIENCY OF EVIDENCE.

The court on appeal, on reviewing the refusal of the trial court to direct a verdict for defendant, will consider the testimony and determine whether the evidence of plaintiff sustains the verdict for him, and, where it does so, it will not consider the conflicting evidence of defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4023, 4024; Dec. Dig. § 997.*]

2. APPEAL AND ERROR (§ 1003*)—VERDICT—CONCLUSIVENESS.

A verdict sustained by any evidence will not be disturbed on appeal, though it may be against the preponderance of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3938–3943; Dec. Dig. § 1003.*]

3. MASTER AND SERVANT (§ 279*)—INJURY TO SERVANT—NEGLIGENCE—EVIDENCE.

In an action for injuries to an employé struck by a rod of steel thrown from a car, evidence held to show negligence of the superintendent in permitting laborers to throw steel rods in the place where he had ordered the employé to go, and where the superintendent knew, or should have known, the employé had gone.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 973–975, 978–980; Dec. Dig. § 279.*]

4. TRIAL (§ 233*) — INSTRUCTIONS — PRELIMINARY STATEMENT OF ISSUES.

While it may not be necessary to make a preliminary statement of the issues raised by the pleadings, it is not error for the court in its charge to state the issues by copying a part of the petition.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 527–530; Dec. Dig. § 233.*]

5. APPEAL AND ERROR (§ 754*)—QUESTIONS REVIEWABLE—INSTRUCTIONS — OBJECTIONS.

Where no objection was made in assignment of error or proposition to the charge be-

cause of a repetition of the same matter in separate paragraphs, a suggestion of repetition under the head of "remarks" will not be entertained on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3086–3089; Dec. Dig. § 754.*]

6. MASTER AND SERVANT (§ 189*)—INJURY TO SERVANT—LIABILITY OF MASTER.

Where a foreman had been superseded by a superintendent, who was a member of the employer, a firm, the negligence of the superintendent causing injury to the foreman was the negligence of the employer, for which the foreman could recover.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–435, 437–448; Dec. Dig. § 189.*].

7. TRIAL (§ 252*)—INSTRUCTIONS—EVIDENCE.

It is not error to refuse charges not supported by any testimony.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

8. MASTER AND SERVANT (§ 189*)—INJURY TO SERVANT—NEGLIGENCE—EVIDENCE.

Where the superintendent, an employer, directing the men in unloading from a car steel rods and a bar cutter, ordered an employé to go after timber and build a skid on the south side of car to unload the bar cutter, and then remained silent when he saw men preparing to throw steel rods on the south side, and a steel rod struck the employé, the liability of the employer did not depend on whether the superintendent gave the order to the men to change the manner of unloading the steel rods, because it was negligence for him to remain silent when he must have known that the employé was on the south side of the car at the time the men threw steel rods on that side.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–435, 437–448; Dec. Dig. § 189.*]

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Action by J. A. McCall against the Lisle-Dunning Construction Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, John L. Darrouzet, of Galveston, and John T. Garrison, of Houston, for appellant. Marsene Johnson, Elmo Johnson, and Roy Johnson, all of Galveston, for appellee.

FLY, C. J. Appellee sued to recover damages arising from injuries inflicted upon him through the negligence of appellant in permitting a steel rod to be thrown upon him from a car. It was alleged that appellee, an employé of appellant, was in charge of some men who were engaged in unloading steel rods from a car, that appellee had ordered them unloaded on a certain side of the car, when W. M. Fowler, the superintendent and a member of the firm, ordered the steel to be unloaded from the west end of the car, and instructed appellee to take men and get timbers and build a skid on the south side of the car to unload a bar cutter that was in the car; that he did so, leaving Fowler in charge of the men unloading the car, and on his return a rod of steel was thrown on him

as he approached the south side of the car; that Fowler was in a position to see him, and negligently permitted him to be injured. The cause was tried by jury, resulting in a verdict and judgment for $3,000.

[1, 2] The first assignment of error complains of the refusal of the court to instruct the jury to find for appellant, and requires an investigation of the entire testimony. Appellant gives undue importance to the testimony of its witnesses, seemingly losing sight of the principle that if the evidence of the witnesses of the appellee is sufficient to sustain a verdict, it will be given preference over countervailing testimony. It does not, therefore, matter what the witnesses for appellant may have sworn, as the evidence of witnesses for appellee have been given full faith and credit by the jury, and if that testimony upholds the verdict, this court must and will sustain it. As representatives of the people in this government of and by the people, juries have been very properly given the right to determine all matters of fact in controversies between litigants, and no court has been, or should be, given the authority to interfere with their findings of fact. This must necessarily be the case if the constitutional right of trial by jury is to remain inviolate. However much the verdicts of juries may be inveighed against, the historical fact remains undisturbed that there is greater protection to life, limb, and property in those countries where the trials of those rights are confided to men chosen out of the body of the people than elsewhere, and their errors are not more numerous than those committed by judges and courts. The voice of the jury, which is the voice of popular government, is usually heard on the side of justice and right, and therefore their verdicts have been sacredly guarded against attack from judges or courts, and they will not be disturbed if there is any evidence to sustain them, even though such verdicts may be against the preponderance of the evidence.

[3] The evidence showed that appellee was in the employment of appellant as a foreman, and was engaged with some men in unloading steel rods to be used in building; that they were unloading the car at a certain part of the car, which had high sides to it and no top; that Fowler, the superintendent of appellant, approached and ordered that the car be unloaded from the west end, and ordered appellee to take some men and get timber and build a skid on the south side of the car in order to unload a certain bar cutter that was in the car with other rods of steel. Appellee took two men and went after the timber, leaving Fowler in charge of the men who were unloading the steel rods. Appellee and the men returned with the timber to the south side of the car, when a rod of steel was thrown over the south side, which struck appellee and broke his arm. Fowl-

er was in the car with the men who were unloading the car, and knew that appellee would return and be at work on the south side of the car. No one swore that Fowler ordered the laborers to throw the steel over the south side of the car, but immediately after the accident appellee asked Fowler why he had changed the plan of unloading and had the steel thrown out on the south side, and he replied that he had forgotten that appellee was coming there and had to release the bar cutter by throwing out some pieces on the south side. There was testimony tending to show that Fowler saw, or should have seen, appellee when he was approaching the car, and did not warn him of the danger. Fowler was in the car and looking in the direction from which appellee was coming, and could see him. The facts show negligence in Fowler in authorizing or permitting the laborers to throw out steel in a place where he had ordered appellee to go, and where he knew, or should have known, he had gone. The first assignment is overruled.

[4] The second assignment of error assails the first paragraph of the charge because it copies a part of the petition in stating the issues which indicated to the jury that the court thought the matters alleged had been proved. There is no merit whatever in the assignment of error. The authorities cited have no bearing on the matter of which complaint is made. While it may not be necessary to make a preliminary statement of the issues raised by the pleadings, it has never been held that it was error to state the issues.

[5] No objection was made in assignment or proposition to the charge because there was a repetition of the same matter in another paragraph, and the suggestion of such repetition, under the head of "remarks" will not be entertained.

The third assignment of error assails the tenth paragraph of the charge, on the ground that it presented certain issues not raised by the evidence. The issue as to Fowler being in a position where he saw, or could have seen, appellee approach the car, and knew, or should have known, that he was near the south side of the car is supported by the evidence. Ryall, appellee, Harper, and the two Greens swore that Fowler was standing in the car facing appellee as he approached the car. Some of the witnesses swore Fowler could see appellee, and he knew that appellee would go to the south side of the car because he had ordered him to work there. If he forgot it, as he stated, it was negligence to have such a lapse of memory.

[6] The fourth assignment of error is overruled. Appellee was not in charge of the men in the car at the time he was hurt, but they were under the direct supervision and control of the superintendent, who had sent appellee to perform another job. The superintendent changed the manner of unloading the car when he first came, and then changed it again, the latter change resulting in disaster to appellee. Appellee was a foreman, not a superintendent, as stated by appellant, but he had been superseded in his duties by Fowler, who was the superintendent and a member of the firm or partnership which was sued, and which is the appellant herein.

The charge complained of in the fifth assignment of error was unnecessary perhaps, but by no possibility could have been harmful to appellant.

The sixth, seventh, and eighth assignments of error are overruled. All are disposed of by our conclusions of fact.

[7] The refused charges contained in the ninth, eleventh, and twelfth assignments of error were not supported by any testimony, and were properly rejected. Fowler admitted that the men acted under his orders in throwing the steel out on the south side of the car. He did not deny that the admission was made.

[8] It is not material whether Fowler gave the order to change the manner of unloading or not. It was negligence for him to remain silent when he saw the employés preparing to throw steel out on the side where he had ordered appellee to go, and where he must have known that appellee was at the time. It follows that the court did not err in refusing the charge set out in the tenth assignment of error. That charge confined the jury to the question of whether Fowler gave the order to the men to throw the steel rod that struck appellee. It would have been error to have so restricted the issues.

The judgment is affirmed.