## CITY OF WICHITA FALLS v. LEWIS.
### No. 12904.

Court of Civil Appeals of Texas.
Fort Worth.
Nov. 18, 1933.

Rehearing Denied Jan. 6, 1934.

Thelbert Martin, of Wichita Falls, for appellant.

John Davenport, of Wichita Falls, for appellee.

DUNKLIN, Chief Justice.

W. M. Lewis was employed as a janitor in the municipal auditorium maintained by the city of Wichita Falls. One of the duties of his employment was to distribute ice to the various offices in the building from an ice box in the basement where a supply of ice for that purpose was kept. The ice box was about 3½ feet square and 4 feet deep with a lid about 4 inches thick weighing about 200 pounds to which was attached a cord running over a pulley with a heavy weight at the other end. In order to take out the ice it was necessary to raise the lid which was easily done by reason of the weight attached to the cord. On or about August 15, 1930, Lewis raised the lid of the ice box in order to take out ice to carry to one of the rooms in the building which was used and occupied by the "Camp Fire Girls." In order to get the ice he leaned over the side of the box and, while engaged in breaking a chunk, the lid fell on his arm, inflicting a severe injury.

The building consisted of a basement and three stories and all the public officers of the city maintained their offices in it, as did the "Boy Scouts" and the Community Chest, and Lewis' duties included the delivery of ice to all offices on the same floor of that occupied by the Camp Fire Girls, including those of public officers of the city.

This appeal has been prosecuted from a judgment rendered in favor of Lewis against the city for damages resulting from the injury to his arm. That judgment was rendered upon findings by the jury that plaintiff was injured as above stated, and that his injury was proximately caused by the negligence on the part of the defendant city in failing to furnish an ice hook with which to handle the ice, and failing to properly fasten the lid to the weight used in raising it; and that plaintiff was not guilty of contributory negligence in the respects specially pleaded by the defendant.

In the case of White v. City of San Antonio, 94 Tex. 313, 60 S. W. 426, this was said in an opinion by Chief Justice Gaines:

"A municipal corporation proper—a city, for example—acts in a twofold capacity. Certain functions are conferred upon it in the interest of the public at large, and certain others for the peculiar advantage of its own inhabitants. For the unlawful acts of its officers in performing functions of the former class, the corporation is held, as a rule, not to be responsible; but for their torts in discharging duties of a purely corporate character the corporation is liable."

In that case the Supreme Court reversed the judgment of the trial court, awarding plaintiff White damages for the acts of the mayor and health officer of the city in taking possession of plaintiff's hotel and in placing and detaining therein certain persons suspected of having been exposed to the infection of yellow fever. As shown in the opinion, the reason for such holding was that the enforcement of quarantine regulations and the establishment and maintenance of pest houses, are matters of vital interest to the public in general, and are peculiarly a public function. See, also, 43 C. J. p. 921. Many authorities might be cited in which cities were exonerated from liability for torts committed by their representatives in the performance of governmental functions of the city, such as Connally v. City of Waco (Tex. Civ. App.) 53 S.W.(2d) 313; Barnes v. City of Waco (Tex. Civ. App.) 262 S. W. 1081; Adkinson v. City of Port Arthur (Tex. Civ. App.) 293 S. W. 191, in each of which it was

390

held that the city was not liable for negligence of its employees in connection with their duties as firemen.

. In McVey v. City of Houston (Tex. Civ. App.) 273 S. W. 313, a recovery for an injury to a pupil from the falling of an archway of one of the school buildings, due to the negligence of the city's agents, was denied because the maintenance of the public school building was a governmental function. For the same reason, in Whitfield v. City of Paris, 84 Tex. 431, 19 S. W. 566, 15 L. R. A. 783, 31 Am. St. Rep. 69, it was held that the city was not liable for the act of a policeman in shooting an unmuzzled dog which was forbidden to run at large by a city ordinance. Also in City of Wichita Falls v. Robison, 121 Tex. 133, 46 S.W.(2d) 965, it was held that the operation of a sanitary plant maintained for the protection of the public health was a governmental function which exempted the city from liability to one injured in connection with that work.

However, in Ostrom v. City of San Antonio, 94 Tex. 523, 62 S. W. 909, it was held that the act of the city in disposing of its garbage was for the benefit of its own people and not in the discharge of a duty to the general public, primarily resting on the state, and was liable for damages caused by the unlawful acts of its officers in so doing.

In City of Galveston v. Posnainsky, 62 Tex. 118, 50 Am. Rep. 517, it was held that the city was liable for an injury to a child who fell into a ditch by reason of the defective condition of the sidewalk resulting from the negligence of the city's employees. In that case our Supreme Court had this to say:

"It would seem that, in so far as municipal corporations of any class, and however incorporated, exercise powers conferred on them for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of the state,—they should be deemed agencies of the state, and not subject to be sued for any act or omission occurring while in the exercise of such power, unless, by statute, the action be given; that, in reference to such matters, they should stand as does sovereignty, whose agents they are, subject to be sued only when the state, by statute, declares they may be. * * * In so far, however, as they exercise powers not of this character, voluntarily assumed—powers intended for the private advantage and benefit of the locality and its inhabitants,—there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage to which an individual or private corporation exercising the same powers for a purpose essentially private would be liable."

We quote the following from 10 R. C. L. p. 1109, § 391, which is supported by numerous authorities there cited:

"When a function is undertaken by a municipality in its private or proprietary capacity, for the profit, benefit or advantage of the corporation or of the people who compose it, rather than for that of the public at large, it is liable for the negligence of its employees to the same extent and under the same conditions as a private corporation."

To the same effect, see 43 C. J. pp. 921-925.

We have reached the conclusion that the undertaking of the city of Wichita Falls to supply the different offices in its auditorium with ice was not the exercise of a governmental function, but was for private corporate purposes and manifestly not for the benefit of the public at large; and that it is liable for negligence of its agents in the exercise of that power.

Without undertaking a review of what appears in the statement of facts, we believe it sufficient to say that there is no merit in the assignments of error presenting the contention that the evidence was wholly insufficient to support the finding of the jury of negligence on the part of the defendant, on which the judgment was based; and the further contention that it showed conclusively, as a matter of law, that plaintiff was guilty of contributory negligence, but for which his injury would not have occurred.

Complaint is made of the refusal of the trial court to submit the following issue requested by the defendant:

"Do you find from a preponderance of the evidence that the plaintiff was injured, if he was injured, by the risk and dangers usually incident to his employment as janitor for the defendant?"

That issue was requested on the defense pleaded, of assumed risk. There was no error in its refusal because of its omission of the further issue whether or not the same defects in the equipment for lifting and holding the lid of the ice box existed prior to the time of the accident; and whether or not plaintiff knew, or in the discharge of his duties must necessarily have known, of that condition and of the risk of injury by reason thereof, at the time he undertook to remove the ice from the ice box. Missouri, K. & T. Ry. v. Hannig, 91 Tex. 347, 43 S. W. 508. A finding in the affirmative on the requested issue of

itself would not have been sufficient to sustain the defense of assumed risk. And the failure of appellant to request submission of further issues covering those omissions was a waiver of any right to complain here that they should have been submitted. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

The defendant specially pleaded subdivision 6 of article 1175 and section 139 of its charter as a bar to plaintiff's suit. Those charter provisions are shown in the opinion rendered in the case of City of Wichita Falls v. Lipscomb (Tex. Civ. App.) 50 S.W.(2d) 867 (writ of error refused), and it is sufficient to refer to that opinion for those provisions. In that suit it was held that those charter provisions were no bar to a recovery for personal injuries sustained through the negligence of the city's employees. And that decision is conclusive against the same defense urged in this case.

Accordingly, all assignments of error are overruled and the judgment of the trial court is affirmed.